We'll hear argument first this morning in Case 11-702, Moncrieffe v. Holder. Mr. Goldstein. Mr. Chief Justice, thank you very much. May it please the Court. Today's undercard is an immigration case. Adrian Moncrieffe was convicted of possession with intent to distribute marijuana under Georgia law. The question in the case is whether he was thereby convicted of a controlled substances offense, which is a deportable offense, but also an aggravated felony of illicit trafficking in drugs, which would mean that the Attorney General has no discretion to cancel his removal. Now, everyone agrees that under the Georgia statute, there is going to be some conduct that would be a Federal felony. But it's also undisputed that the Georgia statute regularly involves prosecutions that would be Federal misdemeanors. So that's why I'm here. Sotomayor, you use that word regularly. Do you have statistics on that? Were they provided in the briefs? They were not. We did not. We attempted very hard to collect them. This is the information I can give you about Federal and State prosecutions of marijuana cases in the United States. In the State system, the most recent available data, it was published by the Department of Justice in 2006, but we have no reason to believe it's changed materially. In 2006, there were roughly 750,000 prosecutions in the States for marijuana offenses. By contrast, in the Federal system, we have data from 2010, and we have two different kinds of data here that it's a little bit more granular, and that is for prosecutions under 841b1, which is the trafficking provision, there were 6,200 cases. For prosecutions under 841b4, which is the provision we say you ought to look at here, and 844, which is the possession provision, combined, there were only 6,200 cases and only 93 prosecutions in 2010. And what we think that illustrates is that there is a massive amount of activity in the States doing things that show that this, in this case, is perfectly commonplace, we think. It's consistent with the other cases that we've seen published by the BIA. Adrian Moncrief possessed. Kennedy, it's a massive amount of conduct that the statute contemplates? The statutory scheme contemplates? I just didn't hear. I just didn't hear. Yes, Justice Kennedy. That's right. The Georgia statute, which just refers to possession with intent to distribute, contemplates both social sharing of marijuana, this case, for example, 1.3 grams of marijuana, which is less than. Mr. Goldstein, when you say this case, is there any proof in the record that there was a small amount and no remuneration? Yes, Justice Ginsburg, although we believe the case is proceeding under the categorical approach, the answer to your question is yes. So let me take you to two places. One is going to be at the back of the blue brief where we have the chemist's report. So page 19, this is from the record in the immigration proceedings. And on page 19 of the appendix to our blue brief, we just agreed because there was so little record material that we wouldn't have a joint appendix in the case. We just published it at the end of our brief. It says material weight less than 1 ounce, approximate weight is 1.3 grams. And for those of us who have been fortunate enough not to experience the drug laws a lot, that's less than half the weight of this penny. So it's — I think everybody agrees it's a small amount. Now, on the question of no remuneration, what I have to offer you is the Georgia statute. Scalia Excuse me. I don't understand. Material weight says less than 1 ounce. Yes. Parenthesis, approximate weight is 1.3 grams. 1.3 grams. That's very, very, very, very little. So then on the question of remuneration, and I should just step back and explain. The reason we're talking about this is that the Federal Misdemeanor Provision 841b4 says that it's not a felony unless it wouldn't be an aggravated felony if it's a small amount and no remuneration. Justice Ginsburg asked about the — what's in the record about that. Now, there isn't record evidence about no remuneration, but there is one significant fact. And to know that fact, you have to look at the Georgia statute, which is also at the end of our brief. It's on page 9 of our appendix. This is the statute he was prosecuted under. It's the second provision, section 161330j1, and I'll just read it. It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell. Sell or possess with intent to distribute marijuana. And he was not charged with, and he was not convicted of, selling. And so we think that should negative any implication that he might have gotten remuneration for this. Sotomayor, we are discussing the categorical approach, but let's assume he had pled guilty, and in his allocution, he had admitted to not a smaller amount or to remuneration. Would an immigration judge, under the argument you're making today, have to ignore that allocution, or would he be able to apply the modified approach and find this gentleman an aggravated felon? Under our rule, the plea colloquy is irrelevant, but we would win under a rule in which it was relevant. So to start with the former, we say that the categorical rule applies. There's no — the only reason that you would look at the modified categorical approach here is to know that it was a possession with intent to distribute conviction rather than a sale conviction. But that evidence would still come in. It would be highly relevant. It's the basis, as this Court explained in Caricurri-Ricendo, that the immigration judge would deny cancellation of removal, right? That factor would still be highly relevant. The Attorney General would exercise his discretion in such a case. Now — Sotomayor, that's the issue with this case. None of these immigrants are being let out automatically. They are still felons subject to removal. The only issue is whether — You said still felons. They're not — but that's exactly right. They're still subject to removal either way. So, you know, lawyers often try and avoid the strength of the other side's case. And so let me just confront what I think is a big argument of theirs. They say our position is underinclusive, because the Georgia statute does include conduct that would be a felony. You just gave an example of it. But our point is that our underinclusivity is a problem, but it's not a big problem. It's not as big as their problem, because as this Court explained in Caricurri-Ricendo, the offense still is removable, and the Attorney General will just deny cancellation of removal. Now, the reason they have a much bigger practical problem is that their rule is overinclusive. It treats as felonies some convictions that should be misdemeanors. Breyer. I see that. There's something I really don't understand in these cases, because the other cases our precedent's been around a long time. So I would have guessed that under that precedent in these other statutes, the obvious thing to do, the obvious puzzle here is not the Federal statute, it's the State statute. What is this thing he was convicted of about? So you'd pick up the phone and you'd phone at random four U.S. attorneys, not U.S. attorneys, but four State attorneys, you know, who work with the statute. And George would say, now, look, the indictment here says possession with intent to distribute, and I can show from the documents that it's a tiny amount. Now, is it your policy if he was selling it to charge under the sell? Is it your policy if he's not selling it to charge under intent to distribute? Is it totally random whether you say sell or intent to distribute? What's your policy? Okay. Then we'd get some answers. Then we'd have an idea whether what you're saying is right. Now, you could do that, but they could do it, too. Anyone could do it. And then we'd have some actual facts about whether this charge really corresponds to the misdemeanor or the felony in the Federal statute. So why? I'm not – I mean, that isn't a brain – that isn't – doesn't require a – it's not rocket science, okay? So why has no one done it? Goldstein, because I don't think anybody would believe me if I went to an immigration judge and I said, Judge, I promise. I promise that the fact that this is a possession with intent to distribute case means that there are never cases in this country. Breyer, the question with this is what kind of a statute is this State's statute? And the kind of statute it is is a statute that is used to prosecute people in small amounts when they don't sell. If your version of what that sell and intent to distribute, the distinction there, is really picked up by the district attorneys. And if it's not, then they may be right, because then intent to distribute may well often include, as it does under Federal law, people who sell stuff. We have not read this Court's cases to suggest that we call it the State attorneys. We have read the Court's cases to engage in ordinary statutory construction and sell means to sell. Okay. You didn't. In any words, nobody did it. So my other question, which is the only other one I really have, aside from making that suggestion, but here, what happened to this person? Yes. He was he sentenced under 16132a? That is, was he sentenced to probation, which would be evidence in your favor, I think. Yes. But was he or wasn't he? Yes. All right. If he was, what it says in this provision is that the Court may, without entering a judgment of guilt, so there was no judgment of guilt, and it says if he completes it, he then is discharged without court adjudication of guilt. Yes. And shall not be deemed a conviction, it says, for purposes of this Code. Yes. Well, why are we saying he was convicted of anything? Sure. Because the government's position is, and the Eleventh Circuit has agreed with it, and just to make sure everyone is on the same page, and that is, the Federal statute is triggered by a conviction. Justice Breyer has just made the point that as a matter of State law, he was not even convicted because he got first offender treatment here, which is a point in our favor. It does show that it was a small and non-serious offense. The reason is that there is a Federal definition of convicted that's independent of the State definition of convicted. And that question is not before us. That's exactly right. Okay. Well, isn't the reason we don't look at the particular facts in a particular case and don't depose four district attorneys is that the Court has adopted a categorical approach precisely to avoid that type of inquiry in whatever it is, 750,000 cases? Yes, that's correct. And it's an even stronger point in our favor, because worse than interviewing four district attorneys is having a fact-bound inquiry into every one of these immigration cases. Remember we don't need that because we've adopted a categorical approach. 841b1d lists the elements and conviction in Georgia, right? Yes. Conviction in Georgia under their provision. Status has each of those elements. And under our categorical approach, that's the end of the inquiry. That is one way of looking at it. We disagree for reasons I'll explain. I will note in our favor that the Attorney General doesn't even defend that position any more. Remember that they do not argue that you can just look at the conviction. They want to have the fact-bound inquiry into every one of these cases. And the reason is that if you apply the categorical approach to the one of the cases they want to do that at the tail end, right? No, they want to do it in every single case at the beginning, just so I can just make clear everybody's position. They're really. Again, I didn't hear. Sorry. You want to do it in every? In every case at the beginning. So I'll lay out. At the beginning of the State prosecution? No, in the middle of the beginning of the immigration proceedings. All right. Before you get on, I didn't understand that to be their position at all. And I suppose we will ask them because they're probably better able to articulate their position. But. So let me explain. So our position is it is a controlled substances offense and you take account of the seriousness of the offense in cancellation. Their position is that it is presumptively, but only presumptively, an aggravated felony. And in every single immigration proceeding, when you have a case like this, the noncitizen can come forward with fact-bound evidence not limited to the record of conviction. Mr. Goldstein, it's because they're trying to mirror the Federal statute, which makes the small amount and no remuneration, makes that like an affirmative defense. The burden is on the defendant to show those two things, to get out from under the main statute. That's correct. So what the government is suggesting is as close to the Federal statute as you can get. Well, let me just say first, I do want to make — just want to focus on what the party's positions are. And they do have this fact-bound inquiry in every one. So I do want to turn to what I think is probably their second-best argument. I was talking about the underinclusiveness as the first one. Their second one is they want to draw an analogy between this and what would happen in a criminal case. So they say, take the conviction and imagine that the conviction is all the facts that you had in a Federal criminal prosecution, and then you would have a burden on the defendant to prove that he was subject to the misdemeanor. We have several points about that. The first is, this is not a Federal criminal prosecution. The Federal statute involved is the Immigration and Naturalization Act, and it tells you that you are supposed to look at the conviction itself and determine whether it corresponds to a Federal felony. This further proceeding doesn't exist, and it's exactly the argument that was rejected in Kerachuri-Rosendo. And let me talk about why — Ginsburg. You said Kerachuri. That case involved, in order to hold for the government, you would have to go outside the record of the State conviction. You would have to add something that wasn't in the State conviction. And it's the same thing here. To get to where you want to go, you have to add something that isn't in the State conviction. No. We disagree. What the Court said in — I agree with the beginning of how you characterized the Kerachuri case. What the Court said is, we don't go beyond the conviction itself. We — and it's true that in that case, the government wanted to go beyond the record to go up. But here what they're saying is that you should go beyond the record to figure out if you should go down. And what the Court said is, no, you look at the conviction itself. Scalia, what does the conviction mean? You say the categorical approach. Yes. Is it the categorical statute under which you've been convicted or, as you seem to be saying, the indictment? It is what you are convicted of. So here he was convicted of possession with intent to distribute. The other side's argument is, well, if I had just possession with intent to distribute, that would be a Federal felony. So we acknowledge the strength of that point.   But the point is, if I had just possession with intent to distribute, and I did possess possession of a particular item, I could have just said, well, I don't know, whatever it is. As I was — I mentioned very briefly to Justice Sotomayor, when you have a divisible statute like this that includes possession with intent to distribute, sell, possess, all of those things, you use the modified categorical approach to figure out which one applies. And so we know he was convicted of possession with intent to distribute, and that's common ground between the parties. It's not the whole statute, it's just the subdivision. Kagan, assuming he was convicted of that, as you suggest, you have an under-inclusiveness problem. The government has an over-inclusiveness problem. If you assume that this statute covers and is regularly used to cover both sets of people, both people with these very minor offenses and people with much more major offenses, the at least apparent attractiveness of the government's position is that they've tried to cure their over-inclusiveness problem, and they've done it by sticking on, and, you know, one can ask where this comes from, this statute. I hope we will. But they've done it by sticking on something that attempts to address their over-inclusiveness problem so that people who are really misdemeanants get classified as misdemeanants and people who are really aggravated felons get classified that way. And you have no similar cure for your under-inclusiveness problem. So why shouldn't we go with their problem, which at least attempts to solve this problem? Well, two reasons. First, they don't have a real solution, and second, Congress solved our problem. And this is what Kerachuri-Rosendo says, and that is when you have an under-inclusiveness problem just like ours, the statute fixes it because the statute treats the conviction as a controlled substances offense. The statute provides the backstop. You don't have to make one up, which is, I suggest to you, is the difficulty with their position. I don't follow your answer because I think you have to concede that under your view, a lot of people who were convicted under the Georgia statute who had a significant quantity, which they intended to distribute for remuneration, many of those people would, under your view of the statute, many of those people would not have committed an aggravated felony. I agree. So you have that. That is our problem. I agree that. It's a large over-inclusiveness problem, which you haven't solved. Okay. That's the part we disagree with, Justice Ginsburg. Maybe I can just read to you what this Court said about this exact issue in Kerachuri-Rosendo. It said that when you have an under — this very under-inclusiveness problem, it is solved by the statute because the attorney — all that happens under our rule, it's still a deportable offense. And the attorney general denies cancellation of removal. So if I could just read very briefly, and this is from the Supreme Court reporter at page 2589, we note that whether a noncitizen has committed an aggravated felony is relevant, inter alia, to the type of relief he may obtain from a removal order, but not to whether he is, in fact, removable. In other words, to the extent that our rejection of the government's broad understanding of the scope of aggravated felony may have any practical effect on policing our nation's borders, it is a limited one. Kerachuri-Rosendo and others in his position may now seek cancellation of removal and thereby avoid the harsh consequences of mandatory removal, but he will not avoid the fact that his conviction makes him in the first place. Ginsburg. But all that follows from, in Kerachuri, the government wanted to go outside the record. No, Justice Ginsburg, it does not. I promise you it does not. The upshot of our position is that Mr. Moncrief has committed a controlled substances offense, and anyone else in his position has committed one. And if there is serious drug amount, the Attorney General will deny him cancellation of removal. Kagan. The Attorney General could just issue some kind of directive telling all administrative law judges and officials to deny cancellation of removal to anybody who commits these kinds of offenses? We – it's an interesting question that I have puzzled about at length. I think the answer is no for a very particular reason, however, and that is the Attorney General has no such categorical rules. We think it's a point in our favor that the Attorney General, in the application starting with 212c before the 1996 Act, which is discussed in this Court's decision in St. Cyr, through the present, has instead applied a holistic look at all of the circumstances. What he certainly can do is direct the immigration judges to place special weight – and this was the rule before 1996, by the way. If you had a serious offense, you had to show special equities that would justify your not being removed from the country. And so we think that's the most likely outcome. A per se categorical rule would be very unlike what we understand the Attorney General to do in any other circumstance. I think that I can be— Would it be permissible? I had the same question. Would it be permissible? I think it would be— Or would you be back up here saying that this violates the statute? Well, we think we would win, so I don't – I wouldn't be back for this client. But I think there would be a substantial argument that it would be arbitrary and capricious, because it would be so unlike anything the Attorney General does in other circumstances. But they would have— But what it is that you're talking about is an order from the Attorney General to the immigration judges to— Yes. To treat all of these cases as barring cancellation of removal, to get us on the back end, as it were, and that is if we— To do the exact same thing, but through an Attorney General direction. And I think our argument that it's arbitrary would be supported by the fact that this Court would have ruled he couldn't do the identical thing on the front end. But it's an open question, and it's not presented here. I had said that there were two flaws in the sort of their characterization of the over- and under-inclusiveness problem. The second was they don't have a real solution. This is a big problem. Under these State convictions in which the amount of drugs and whether there was remuneration are irrelevant, it's going to be extremely difficult for uncounseled noncitizens who are in jail, who don't have access to tools of communication to prove to an immigration judge this fact-bound inquiry which they are inserting into every single case, that their offense actually corresponds to a misdemeanor. So while you say that they have provided the solution, I don't know where it comes from in the statute, but we think it is not a practical solution. And that problem is even worse in the many contexts that are not just straight removal. We said in our opening brief, and the government's response ignores, that there are many cases in which immigration officials have to make these decisions about whether it's an aggravated felony much more on the fly, without the opportunity to call everybody in and— Kennedy. Do you have any statistics, if you take the whole universe of convictions under the Georgia statute, what percentage of them are for these minor offenses and what for the major? Do we have any handle on that at all? We don't. We tried. I'm sorry. We were unable to do it. The Department of Justice has better relationships with prosecutors, and so maybe it will have that information for you. But I can say— It's possible. I can say that the — it is absolutely commonplace, from looking at the case law, for the States to tackle this small social sharing of a couple of marijuana cigarettes. This is — that's the distinction between 93 prosecutions under — or convictions under B-4 and possession in the Federal system and 750,000 in the States. Federal prosecutors leave these to the States, which brings me back to my other answer to Justice Ginsburg's pointing out the government's argument about a parallel between this and a Federal criminal prosecution. And the reason they want to do that, Justice Ginsburg, is that in a Federal — actual Federal criminal prosecution, the burden of proof never matters, including because Federal prosecutors almost never bring these cases. So here is what we tried to do. This statute, B-4, was enacted in 1970, some 42 years ago. We tried to identify one case in 42 years in which the burden of proof in the Federal case made any difference at all. And we were unable to. And I would be really interested to know if my friend is able to identify one case in 42 years which it actually made a difference. And the reason is, in an actual Federal prosecution, the FBI agent would come in and say, here are the drugs, and they were trying to sell it to an undercover officer. It's never the case that it actually — the defendant is in a position of trying to prove that it was a misdemeanor. But what they're trying to do is to take that rule which is derived from Apprendi, that there's a burden of proof so that the government doesn't have to indict that it wasn't a B-4 offense, and take the silence of the State record, where these facts are completely irrelevant, the quantity and remuneration, and transpose them into the Federal system and take great advantage of the fact that the record is silent. And so — Sotomayor, I don't know, and I'm not going to ask you to prove to me how the burden of proof was met or not met in those. But let me give you a different hypothetical. Let's assume Georgia has the Federal statute, but differently than the Federal statute. It has a sale distribution provision, and it has a small amount, no remuneration statute. Yes. What would happen in those States? There are about 15 of those States, and in those States, if you weren't convicted under the small one, then you would infer it wasn't a small amount and no remuneration, and the person would have committed an aggravated felony. Our issue arises only when you have a situation in which the State is prosecuting people under the statute that would be a Federal misdemeanor. If the State — I'm sorry. Go ahead. No. If the State has a different system, as a material number of States do, in which they track the Federal system and they have a small provision or a remuneration provision, which another nine States have a remuneration provision, in those situations, if you have a conviction that isn't under that social sharing provision, it's an aggravated felony. Your use of the statistics, I think, assumes that Georgia and other States are prosecuting every case that comes before them, because that's how you get, you know, of these 750,000 nationwide, so much more of them must involve tiny amounts. But, of course, perhaps they don't prosecute the cases involving tiny amounts. So that most of those cases or some percentage of them may, in fact, also involve the serious type of conduct addressed by the Federal statute. Well, I have one really good example of a prosecution for a small amount. It's this case. And we don't deny that there are many — Mr. Chief Justice, please do not misunderstand me to be arguing that every Georgia conviction or that 80 or 90 percent of them are the small ones. What I'm trying to tell you is that a lot of them are just like this one, and I think the data bears that out. And the question before you is, under a categorical approach, is it fair to presume that they're all felonies? Is it fair to presume that what Congress recognized here is that there would be a correspondence between a conviction under this statute and the Federal aggravated felony of illicit trafficking in drugs to strip the Attorney General of the United States of any opportunity whatsoever to consider the circumstances of the case? We think that is not the best reading of the statute. Thank you, counsel. Shah. Mr. Chief Justice, and may it please the Court. Petitioner's proposed rule would confer a free pass from aggravated felony treatment to criminal aliens convicted under a majority of State laws that require neither remuneration nor more than a small amount. What's the free pass? The free pass is mandatory as opposed to discretionary deportation, correct? So the free pass is that? The free pass is that you would never have an aggravated felony for this conviction under any State that did not make an element of the State offense to disprove no remuneration or a small amount. Those convicted individuals would still be subject to deportation? Yes, Your Honor. They would still be subject to deportation. And nothing would stop the INS judge from considering the amount of drugs, correct, that the individual actually was involved in, and that could be introduced through hearsay through almost any document, correct? Your Honor, you're talking about the discretionary cancellation of removal proceeding? Yes. It's true, Your Honor, that could come in there. But Congress specifically enacted this aggravated felony provision to take away that discretion from the Attorney General. The motivating factor behind the discretionary cancellation of a remuneration would be that desire heavily in a case in which a convicted individual is proven to have sold a large amount, you still think they're going to cancel? Your Honor, what Congress said when it passed this very provision was that immigration judges were granting too much discretionary relief to this very class of criminal aliens, and that is why it implemented this aggravated felony. Now, Petitioner says it's not going to have a big deal on immigration, big impact on immigration policy, for the reason that you suggest the Attorney General can do it at the back end. Well, can you pause right there? You just made the argument that your position on Castro-Rodriguez is wrong. You say Congress took away the Attorney General's discretion. Then you come back and say, well, we're going to exercise that discretion under Castro-Rodriguez, and this Petitioner in particular can take advantage of it. Your Honor, it's not an exercise of discretion under Castro-Rodriguez. We at the tail end have an inquiry that I think mirrors the CSA scheme. Remember that this aggravated felony provision in the INA incorporates by reference the CSA scheme. What the CSA scheme provides is, as a default matter, any conviction for possession with intent to distribute marijuana will be a felony. But the CSA scheme also provides a narrow mitigating exception for those who distribute just a small amount socially. What our scheme does is that the – Is the authority for that Castro-Rodriguez? I'm sorry? Is the authority for that the decision in Castro-Rodriguez? To have that secondary proceeding? Well, I think it comes from the statute, the INA, which incorporates the CSA scheme. Because many of the State provisions don't offer that same affirmative mitigating exception that the Federal scheme does, what Castro-Rodriguez does is it looks to the INA, which incorporates the CSA, and then provides a similar mechanism in immigration court. But it's not an unprecedented inquiry. The Board has been doing similar inquiries for at least a quarter of a century. Well, Mr. Shah, the Board may have been doing these inquiries, but I just don't understand the statutory argument. Because the way the statute – the way your own statutory argument runs is that if the conviction, the State conviction, was a conviction for possession with intent to distribute, then those are the elements of a Federal – of a Federal felony, and so the person – and an aggravated felony. So you say under the elements approach, this person has committed an aggravated felony. And the statutory directive is that when a person has committed an aggravated felony, he is deportable and there is no exercise of discretion that can come into play. And so your whole back-end process, which says, oh, well, maybe not, maybe he's not automatically deportable, it doesn't come from the statute, and it seems to run into the statutory language, which says an aggravated felon must be deported. The end. Your Honor, I agree. The government could have taken the hard-line approach that it's game over under the categorical inquiry because of the elements. Well, that's what the statute says, and that's what your own statutory analysis says. Your Honor, I don't think it's inconsistent with the statutory scheme. In fact, I think it's consistent. And here is one way to think about it. This particular aggravated felony is a little bit complicated because it incorporates by reference in two different levels. The CSA, Congress — let's assume Congress rewrote the aggravated felony definition to eliminate the incorporation by reference. I think what the equivalent, the functionally identical formulation would be, the definition of the aggravated felony is any distribution of a controlled substance, comma, unless the defendant shows that it involved a small amount of marijuana for no remuneration. That would incorporate both the presumptive felony provision, any distribution of controlled substance, you have the same two elements, and then it would add in the proviso that's in the CSA mitigating exception. Functionally identical. Aggravated felony is any distribution of a controlled substance unless the defendant shows that it was a small quantity for remuneration. What our inquiry does is — Roberts. Go ahead. I'm sorry. What our inquiry does is allow the Board to get to that second part of the definition, the unless clause. And that mirrors exactly other aggravated felony provisions in the INAs. But you've answered Justice Kagan's question by — she said, doesn't your own interpretation of this statute require the opposite result and — or the harsh result? And you say, well, suppose Congress wrote a statute this way. But that wasn't her question. The question is, what does it say? Your Honor, I'm not positing a different— You said Congress could write a new statute. Of course Congress could write a new statute. But what about this one? I'm not positing a new statute. I was simply taking out the incorporations by reference so we could look at it in a different way. I think it's functionally identical to the provision at issue here. And I think it's— No, I'll just read you, Mr. Shah, this sentence from your brief. And I could read you a thousand of these in your brief. Because Petitioner's Georgia conviction necessarily established that he knowingly possessed marijuana with the specific intent to distribute it, that conviction constitutes an aggravated felony. Well, if that conviction constitutes an aggravated felony, he has to be deported. And there's no exercise of discretion that this statute allows. Well, Your Honor, I would say that it presumptively creates the aggravated felony, and it's because of that— Well, now you've just put in words into your brief. Well, well— And really, truly, you say this 10 or 15 times. Well, Your Honor, the heading to the brief says presumptively. And so I didn't use that word every time. But I think the point is that it would be the aggravated felony has that unless clause. And if you look at other aggravated felony provisions in the INA, such as the one reproduced on the top of page 34 of the government's brief, it defines an aggravated felony as certain document fraud crimes. And then it has a clause that says, quote, unless the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or abating only the alien spouse, child, or parent, to violate a provision of the INA. So you could say ball game over once you have shown the document fraud crime under the categorical approach. But the INA specifically has a provision that says unless the alien can show that he committed the offense for the purpose of assisting, abetting. But this is a new position for the government. My understanding is that you — your clients were on the other side of this position in Castro Rodriguez itself. Is that not correct? Well, Your Honor, I don't think that we categorically deny that you could have this sort of proceeding. And in the opt to this case, I know Petitioner says this is a new position in this case, pages 13 through 16 of our op embrace Castro Rodriguez as the right way to do it. I think it's the same. But that was a change in the government's position, wasn't it? Your Honor, I can say that the government did dispute the particular facts in Castro Rodriguez. I can't say that they categorically rejected the availability of that sort of inquiry. And that sort of inquiry is not new. If you look at the Grojalva decision, which is discussed on — in footnote 23 of our brief on page 36, that was a precursor to the controlled substance ground of removability that is currently in effect. And so if you look at the language of that precursor provision, essentially it said any aliens deportable for a drug offense, unless that drug offense involves a simple possession of marijuana of 30 grams or less. Roberts. So what does — in a case in which the Attorney General can cancel removal, putting aside this case, what are the sort of things he looks at in deciding whether or not to cancel removal? It's a balance of equities. After assuming that the alien has established the three eligibility criteria set forth, it will be a balance. It's a favorable exercise of discretion. It's a balance of the equities. Roberts. Presumably is the amount of drugs involved, whether they were for intent to distribute for remuneration, all the sorts of things that you say he can consider under the provision that says he does not have the authority to cancel removal. Your Honor, those are the sorts of factors that might be open to consideration. But what Congress did is it took away the ability for the Attorney General to exercise that discretion. That was the main purpose of this very aggravated felony provision. Now, Justice Sotomayor, if I can go to your case. Sotomayor Each time you say that, you get back into the hole that Justice Kagan has been asking you to climb out of. If Congress's intent was to barre discretion, then I'm not quite sure how you get to your alternative to get out of your over-inclusiveness. Your Honor, this will barre discretion in the vast majority of cases, and here's why. If I can go back to the data question that you asked, Justice Sotomayor, we do have Federal data, and I interpret the data a little bit differently than my colleague. What data we have is that over the last decade, there have been over 60,000 convictions under 8 — under Section 841A for crimes involving something more than possession of marijuana, 60,000. There have been, in those 10 years, exactly 20 that have been sentenced under Section 841B for. My colleague combines 844A, which is a possession offense, but if you isolate out of the data only those who qualify for the mitigating exception, those who are charged with distribution of marijuana but only have a small amount of remuneration, you have 20 out of over 60,000. I think this is a fairly atypical case, to the extent this Petitioner Ginsburg Do you agree with Mr. Goldstein when he says in reality it's not an affirmative defense, that the defendant never has to prove the amount? I don't agree with that, because if it were, in fact, the case that the government had to disprove the small amount and, more importantly, the remuneration element, that would be a very different statute. Every court of appeals, lots of the Federal courts I'm sorry, Counselor. The government can do it very easily. If you have less than an ounce of marijuana and nothing else from which you can infer an intent to sell or distribute, and you have no proof that this individual is engaged in drug trafficking, what more does the defendant have to show? How does it raise his burden of proof? I'm not saying the defendant had to show more. I believe Justice — I thought Justice Ginsburg's question is what would the government have to show to disprove it. Sotomayor, I guess my point is that one, which is, don't the facts that the government have either show it or not show it in virtually every instance? I think it's a very different question if you put the burden on the government to show that, in fact, no remuneration was involved. The government would have to meet its burden in a criminal case to show beyond a reasonable doubt that there was no remuneration at all. That's going to change the result in a large number of cases where there is a relative — it's going to be the universe of cases where there is a relatively small amount of drugs involved. Sotomayor, right. And in that universe of cases, in fact, the presumption is probably going to be that it's not for a distribution or remuneration. Sotomayor, can I go back to your substantive argument? Yes. All right. This is a — you're right, it's an unusually crafted statute. And really what the issue is, generally, what you have with lesser included offenses is you have a base offense and then an enhancement that goes up. You commit the basis offense of burglary, but if you did it with an explosive or you did it with a dangerous weapon, it goes up. That's exactly right. And applying the categorical approach is relatively easy there, because either the State offense includes the addition or it doesn't. This is sort of in reverse. You've got a statute with the same elements that can be either a misdemeanor or a felony, and you're saying it can be either under the CSA, but we have to assume it's the greater, because of Apprendi, because of the proper interpretation of the statute, Apprendi might have influenced that interpretation of the statute, but every court of appeals that has interpreted this statute has said that the default punishment is punishable up to 5 years. But that's under Apprendi. Well, both before and after Apprendi, Your Honor, this statute was interpreted the same way. Apprendi didn't change anything, because there were no sentencing factors or elements to get to the 5-year. That's the point. Didn't we talk about the categorical approach in footnote 3 of our case in Karachuri, where we said that in talking about the generic Federal offense, whether it's a felony or not, that we can't look at just strictly the elements of the crime, that we have to also look at the sentencing factors, because when we're talking about what constitutes a misdemeanor or a felony under Federal law, we have to look at both. Well, Your Honor, what Karachuri involved was something very different. It involved a recidivism factor, an aggravating factor. When you're talking about an aggravating factor, Apprendi jurisprudence has treated those somewhat equivalent to an element because it raises the statutory maximum. And so when you're trying to decide whether something is punishable as a felony, it's natural to look at the aggravating factor. The other thing I would say about Karachuri is that it's easily distinguishable on the grounds that Justice Ginsburg raised. The government's argument in Karachuri was much more difficult. The government was trying to rely on a recidivism factor that was not part of the predicate conviction, and it was trying to rely on that factor to elevate what was otherwise a misdemeanor under both State and Federal law to a felony. Here, the predicate conviction itself has all the elements that are required for a Federal felony under the CSA, namely possession of marijuana and a specific intent to distribute. Sotomayor, but the same elements would go to the misdemeanor. Really, the issue for me is it could be one or both, and when do we tell the immigration judge that he can, should or should not choose between the two? I think there are two ways, Your Honor, that show the two different lines of reasoning that show that the government's approach to the categorical part of the inquiry is the right approach and not Petitioner's approach.  Well, here's how I think. Sotomayor, do we choose between it being a misdemeanor or a felon? Right. I think here's the two ways you get there. First is by looking at how this Court has consistently formulated the categorical inquiry. Starting with Taylor, pre-Apprendi case, compare the elements of the predicate offense to those of the generic offense. Fast forward past Apprendi to all of the more recent cases, Lopez and not, still the same inquiry, focusing on the elements of the predicate and the elements of the generic. If that is not enough for you, Justice Sotomayor, if there's still some uncertainty as to when you have mitigating factors like in this case, and the question is, well, does the predicate conviction have to affirmatively negate those narrow mitigating criteria, then this Court can look, if it wants to go to first principles, look at this Court's decision in Nijuan. There it had a different aggravating felony, certain fraud and deceit offenses which resulted in a $10,000 loss to the victim. What the Court said, look, fraud and deceit, those are clearly elements. We're going to apply the categorical approach to figure out whether those elements are satisfied. But the $10,000 loss factor, we're not sure. We're not sure whether the predicate offense has to affirmatively establish it or not. And so what the Court did is it did a survey of the 50 States. It looked at the 50 States, and it turns out that in a vast majority of those States, the predicate conviction will never establish that $10,000 loss factor, and so you're going to have a vastly under-inclusive aggravated felony, and that's something that Congress could not have intended. The Court said Congress would not have intended its aggravated felony provision to apply in such a limited and haphazard manner. I submit that's exactly what you have here on pages 26 to 30 of our brief, and Petitioner does not take issue with a single one of the statutes that we cite. And we go through all 50 of them. We show that in a clear majority of the States, the predicate conviction will not establish that there is remuneration or more than a small amount. Congress should not. Kagan, I think the problem with your main argument is that it leads you to a result that you don't want to accept, because your main argument is all we've done in our past cases, and I can argue with this, but your argument is all we've done is compare the elements. But if all we do is compare the elements, then we don't get to your discretionary scheme in which we also admit evidence of the case-specific nature of the offense. I mean, so your arguments all go towards a very purest solution, and then you say, oh, no, that's a crazy solution. It's a crazy solution because we would wind up saying that misdemeanors like this person, like people who are actually convicted under B-4, who are clearly misdemeanors, would wind up as aggravated felons and must be deported. Well, first, Your Honor, I'm glad that we have an agreement on the first part of the categorical inquiry, because I think that is the main part of the inquiry that this would establish. But I don't think we really have an agreement, because it seems to me that Karachuri actually says we don't just look to elements, but if we were just to look to elements in the way you're arguing for, we wouldn't get the result that you're arguing for. Again, Your Honor, I think you have to look at this particular aggravated felony, which I think is structured similar to other aggravated felonies in the INA. If you look at the aggravated felony in the INA that's on page – top of page 34 of our brief, and that's the one about document fraud crimes, it says the alien then, if the alien then shows that that document fraud crime was perpetrated in order to help a family member, then no more aggravated felony. How does the alien make that showing? He comes into immigration court after it's already been established that you have the predicate document fraud felony. He comes into immigration court. He has to bring forth evidence on his own that shows that it satisfied this familial exception to that document fraud aggravated felony. I think that the – Roberts, and the whole point is that there is no similar provision in the statute at issue in this case, right? I think the point is that there is a similar provision in the – the INA here incorporates the CSA to define the aggravated felony. The CSA says it's a felony if you have possession plus intent to distribute unless the defendant shows, and this is how it's been interpreted by every court of appeals that has interpreted the CSA, unless the defendant shows it was only a small amount for no remuneration. That is an identical formulation to some of the other aggravated felonies in the statute. And the reason it's been interpreted is to allow the alien to come into immigration court to show the exception. We are not aware of a single court decision that has ever interpreted any similar provision in any of the other aggravated felony provision to require the predicate conviction to affirmatively negate it. And that's exactly what Petitioner's main submission is, that this predicate conviction has to affirmatively negate the possibility of a narrow mitigating exception. That is unclassified. Kagan I don't think that that's quite right, Mr. Shah, because if you read this statute, what it most looks like is that Congress is simply classifying two different kinds of conduct. Congress has the – the social sharing conduct, and that's in one section, and the everything else, the more dangerous conduct, is in another section. And so it's not something where it's like, oh, you're trying to get them to negate a specific point. Congress has created two separate sections, two – and one is a felony and one is a misdemeanor. And that's the real way to understand this statute. And then the categorical approach suggests, well, in that case we accept the under inclusion rather than the over inclusion. Shah Well, Your Honor, I disagree with that characterization of the statute. Every court of appeals that has considered this statute has rejected the argument  that in a higher offense, the default felony provision, that the government would have to treat as elements the mitigating criteria of remuneration and small amount. Every court of appeals has rejected that. If this statute were drawn, as you suggest, and it were elements of a crime, that is, you had two separate offenses, one is possession with intent to distribute a small amount for no remuneration, or it could just say possession with intent to distribute marijuana. If that was one distinct offense, that was a misdemeanor. And then Congress created a second offense that says, in cases where there is more than a small amount in which there is remuneration, then you get a 5-year maximum instead of the 1-year maximum. That is effectively making as an element the government to disprove both the possibility of no remuneration and more than a small amount. If that was the statutory scheme that were at issue, I would agree with you Petitioner that it would prevail under the categorical approach. That's not the statutory scheme here. They do not disagree with that. They agree that every court of appeals that has interpreted this has interpreted as one offense and that those mitigating criteria are just that. They are mitigating exceptions and not offense elements. I think the other point I would make, Your Honor, is that if you're going to say that you're going to say that you're going to say that you're going to say that you are going to say that, then you're mislabeling rather than, look, what Congress did here was to say that certain kinds of offenses are felonies deserving of great punishment and other kinds of offenses are misdemeanors deserving of less than a year in prison, and we see those categories of conduct differently. And if you're saying that if Congress had said two separate offenses, then the categorical approach means that Mr. Goldstein's client wins, I guess I just don't get what in this statute suggests something different from that. Two things, Your Honor. One is I don't think it's a matter of labeling, because Congress knows that these labels actually have big consequences. If you made those mitigating criteria elements, that would be a very different statute, which the government in every case would have to show beyond a reasonable doubt that it's more than a small quantity. That may not be difficult, but in cases where there is a small quantity, it may in fact be difficult to distinguish. Scalia. Scalia. I thought that when Congress enacted this provision, there was not the distinction between elements and sentencing factors that we now have, that the statute was enacted, in other words, before Apprendi. Your Honor, this statute was enacted before Apprendi, but Apprendi doesn't change the interpretation of this statute. This statute, in the relevant criteria, this statute was interpreted both the same before and after Apprendi with respect to the default provision, because the default provision doesn't require any factors or elements at all to get to the felony point. Scalia. That may be, but it certainly goes to your argument that Congress had in mind some distinction between elements and sentencing factors. Well, I think what Congress had in mind is that those mitigating criteria would not be treated as elements. And, Justice Kagan, to get back to your question, how do we know? Well, we can look at the inquiry that the Court did in Nijhawan. We — it would not be — it would not be consistent with congressional intent to assume that Congress intended that this aggravated felony provision would not have any effect in the clear majority of States that do not make either a small quantity or an element of the offense. That is what Nijhawan was about. It was trying to figure out, did Congress intend this particular piece of the aggravated felony description to be subject to the categorical approach or not? That is, did it require the predicate conviction to establish or negate it? And the right way to look at that is to look at the State of the State laws. And here we know that in a clear majority of States, they do not require remuneration, they do not require more than a small amount. You will never get an aggravated felony conviction out of a majority of States. Congress could not have intended that result. That's what Nijhawan said. Kennedy, if you do not prevail in this case, can you simply solve this problem in the discretionary removal proceedings? Your Honor, I think that's a — We're going to order you removed unless you bring in evidence that this was a minor amount, period. Your Honor, I think that that — I think that's an open question. That's one that has not come up yet. I think Congress specifically — Well, don't you think it's under the law and under administrative practice that it's an option available to you? It may be an option open to the Attorney General to do that. The Attorney General would have to issue an order to that grounds. I imagine it would be challenged and we'd have to litigate it. But what we do know is that Congress didn't want those sort of discretionary determinations made. Congress knew that all of these areas — Sotomayor, do you have the same answer as Mr. Goldstein, that the modified categorical approach wouldn't permit the immigration judge to look at the plea allocution to determine the amount? I think the modified categorical approach would allow — would allow — So that in many of these cases that we're talking about, it is possible that the plea allocution would determine the amount that the alien sold or show that he sold something. Yes, Your Honor. I think — And that would take care of this issue of how many people are escaping automatic removal. I think if the plea agreement or plea colloquy set forth the amount and it was more than a small amount, I think the modified — our position would be that the modified categorical approach would allow you to reach that. Petitioners and Zemeckis' argument are essentially that the plea agreements aren't going to say that in a large majority of these cases, for the simple reason that a simple — that a vast majority of the States don't make more than a small quantity, an element of the crime, and so it's going to be irrelevant. But that simply shows— But the vast majority — the vast majority, in my experience, do say whether the crime was for sale or distribution. And if that's the case, then the government would agree that if we were to lose this case, we could then look at that — look at that evidence to show — to disprove more than a small amount, something that's not an element in any of the State crimes. Are there any other consequences? We've been talking only about dispensation from removal. But are there any other consequences that matter? Yes, Your Honor. There are other consequences that matter. For example, a person who's not — a person is not only removable and not only deprived of cancellation relief, they're — those who are aggravated felons are essentially deprived of all forms of discretionary relief except for Convention against Torture Relief and withholding of removal. It also has implications beyond the immigration context. There — at the same time that Congress enacted this aggravated felony provision, it made it a sentencing enhancement provision in criminal prosecutions for illegal reentry. And so in any illegal reentry prosecution, if the defendant is also — has a prior conviction for marijuana distribution, they would be subject to a significant sentencing enhancement under both the guidelines and Section 1326, the illegal reentry statute. If Petitioner's rule were to prevail in a significant number of those cases, in any State in which it did not have those relevant elements, that sentencing enhancement would no longer have operative effect. So, Your Honor, it's not simply the case, as Petitioner would like to say, that the only thing here is a difference between removability and cancellation of removal relief that the Attorney General can fix on his own. There are other ancillary consequences, and I think the criminal — the consequence in the criminal prosecution is a significant one. Roberts. Does that — does the Castro-Rodriguez proceeding take care of those additional consequences? If I may respond, Your Honor. Oh, yeah. Thank you. I don't — I think what you — we haven't had any criminal cases where the — where an alien has come in and tried to make the argument. I imagine if Petitioner prevails, it will be made in every single one of those 1326 reentry prosecutions. I think if the Court were to accept the government's submission both on the threshold categorical inquiry and on the tail-end fact-specific inquiry, I think a defendant would probably be able to have the opportunity to try to make that showing in the Federal sentencing proceeding as well. Thank you, counsel. Mr. Goldstein, you have 3 minutes remaining. Mr. Chief Justice, I told you I was going to acknowledge the strengths of the other side's case, and I want to just recognize that you can conceivably read the statute their way, but the question is, if you actually adopt their statutory construction argument and you say we're going to look at the elements and it's an aggravated felony, we're comparing two different ways of reading it, and they admit that their way of reading the statute comes up with an answer that Congress couldn't possibly have intended by treating all these misdemeanors as aggravated felons. Now, their solution is to add a whole other proceeding that isn't in the statute. Another solution is just to recognize their reading is wrong. If it produces this ridiculous result that Congress couldn't have intended, and our reading is perfectly sensible, and not only do you have the solution of the removal proceedings, but also Justice Kennedy's suggestion of the Attorney General's ability to issue an order, Justice Sotomayor's solution of being able to look at the plea allocution, questions that aren't presented here, but lots of ways of addressing any adverse consequences of our rule, what in statutory construction allows us just to add this procedure that isn't in the statute? Breyer. Well, it's the word punishable, I think. Well, punishable is a good word. You see, they're thinking under Georgia law, this is punishable as a felony only if it wasn't a small amount used for personal use, you see, and therefore they go into the hearing. It's not punishable as an 841 felony unless those two things are absent, and therefore they have the hearing to find out. And the word punishable doesn't appear in the statutes, the other ones that we've construed. That's what I thought they were doing. Okay. But I don't think that's actually what they're doing, because Mr. Shaw did not deny Justice Kagan's questions about, yeah, it would produce this ridiculous result, and so we're going to add this other proceeding. When they say, what they do with punishable is they say look at only the elements of the Federal offense. And that's how they say that any Georgia conviction, even though, Justice Ginsburg, lots of these convictions will just be equivalents to Federal misdemeanors, because they are the equivalent of they — because they involve possession with intent to distribute. Those are the only elements of the offense. Then they're all punishable as felonies, even if they would be misdemeanors. So I don't think punishable helps them, and they don't seem to argue on the basis of punishable. So my base point to you is that why, in choosing between these two readings, we have to choose between the two, is because they are not one-sided.   And they have different strengths. Their argument starts from the proposition that theirs produces a result that Congress couldn't have intended. And, Mr. Chief Justice, they did start out with the hard-core position. I can give you the example. It's our case. Remember, even though this is 1.3 grams, even though he was not convicted of selling, they ordered him mandatorily deportable without any inquiry into the underlying facts, they recognized that can't be right. And so they were trying to tack something onto the statute that doesn't appear in the statute. The last point that I want to address is actually a very small one, and that's about Justice Thomas' dissent in the Lopez case on whether you should look to the State definition of whether this is a felony or instead the Federal one, because the government cites it in a footnote in their brief. And we would only say that the government is not relying on the Lopez dissent. It invokes Lopez repeatedly in the Federal courts. And so this is a situation in which the Court's decision in Lopez should take hold as a matter of statutory stare decisis, and what matters here is the Federal treatment of it. When you don't know if the Georgia conviction is a felony or a misdemeanor under Federal law, you don't know which one it is. What the categorical rule says is that the State conviction doesn't necessarily establish it's a Federal offense, the Federal felony here, and therefore you don't treat it that way. The argument that my friend ended with, ended with about, hey, this is going to be applied in Federal sentencing and lots of other contexts, makes it worse, not better. How in the world are we going to have these other Castro-Rodriguez proceedings, these other intermediate proceedings about determining the facts of the offense in Federal sentencing? It gets vastly more complicated. Our rule addresses the core concern of Congress. It gets the right people deported. Their rule, because it's over-inclusive, there will be noncitizens who can't prove their offense was a misdemeanor and they shouldn't be removed. Thank you. Roberts. Thank you, counsel. Counsel, the case is submitted.